UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - :
REGINALD MCFADDEN,                        :   04 Civ. 8135 (RCC) (JCF)
                                          :
             Plaintiff,                   :       REPORT AND
                                          :     RECOMMENDATION
   - against -                            :
                                          :
JAMES KRALIK, WILLIAM CLARK, ___ LISKA,   :
ANTHONY FARINO, CHRISTOPHER FALCO,        :
____ FALCO, NICHOLAS SOLFARO,             :
TODD LAYMAN,_____TRACY,                 :
                                          :
             Defendants.                  :
- - - - - - - - - - - - - - - - - - - - - :
TO THE HONORABLE RICHARD C. CASEY, U.S.D.J.:[1]

      Reginald McFadden brings this civil rights action pro se

pursuant to 42 U.S.C. § 1983, alleging violations of his civil

rights in connection with charges brought against him while he was

a pretrial detainee in the Rockland County Jail (the "RCJ").  The

defendants now move for summary judgment pursuant to Rule 56 of the

Federal Rules of Civil Procedure.  Specifically, they argue that

all of the plaintiff's claims are time-barred.

Background

   A. Facts

      At the time of the incidents in question, the plaintiff was a

pretrial detainee at the RCJ awaiting trial on charges of rape and

assault.  (Second Amended Complaint dated  June 10, 2005 ("2nd Am.

_____

      [1] Judge Casey passed away on March 22, 2007, and this case has
not yet been reassigned.  This Report and Recommendation is
therefore drafted as if it were addressed to Judge Casey, and the
parties should expect the case to be reassigned shortly.

Compl."), at 2; Brief In Support of Defendants' Motion for Summary Judgment to Dismiss the Complaint ("Def. Memo."), attached to Declaration of Paul Nowicki dated July 26, 2006 ("Nowicki 7/26/06 Decl."), at 4). On March 13, 1995, defendants Tracy, Falco, and Layman conducted a search of his cell, supervised by defendants Solfaro, Farina, and Clark.[2] (2nd Am. Compl. at 2). This was the latest in a series of searches that the plaintiff claims were conducted as part of a "campaign of harassment" by prison officials in retaliation for his filing of a lawsuit against the prison. (2nd Am. Compl. at 2). He further claims that these searches were conducted at the behest of defendant Kralik, who, according to Mr. McFadden, hoped to find evidence linking the plaintiff to an unsolved murder. (2nd Am. Compl. at 2).

On March 15, 1995, Mr. McFadden was issued an Inmate Misbehavior Report, which charged that he had attempted escape, possessed prison contraband, and committed criminal mischief. (2nd Am. Compl. at 3).[3] In addition, criminal charges based on the same

---

[2] The plaintiff's account of these events varies slightly from one document to another -- for instance, in some versions he claims that only defendants Farina and Clark took part in the search of his cell while in others it is the full panoply of defendants -- but these differences are not material to the disposition of his complaint. For the purposes of this opinion, the facts are drawn largely from the plaintiff's Second Amended Complaint.

[3] The plaintiff alleges that these charges were false and retaliatory, and were made on the basis of trumped-up evidence. (2nd Am. Compl. at 3). He claims that he was charged with attempt to escape on the basis of a small, loose piece of cement in his cell and that a law book, paper clip and used-up pen were deemed

conduct were filed against the plaintiff.  (2nd Am. Compl. at 3).
The criminal charges were dismissed on August 28, 1996 (Certificate
of Disposition, attached as Exh. B to 2nd Am. Compl.) and were
sealed on July 31, 2000 by order of Supreme Court Justice Robert R.
Meehan. (Decision and Order dated July 31, 2000, attached as Exh.
A to 2nd Am. Compl.).

Mr. McFadden was confined to the Administrative Segregation
Unit at the RCJ on March 20, 1995 and remained in administrative
segregation there and at various state detention facilities until
August 2, 2000. (2nd Am. Compl. at 3).  It appears that a hearing
on the administrative segregation order was held on April 4, 1995.
(1st Am. Compl. at 7; Transcript of Administrative Segregation
Hearing ("Hearing Tr."),[4] attached as Exh. F to Pl. Mot. Summ.
Judg.).   According  to  the  plaintiff,  his  placement  in
administrative  segregation  was  the  result  of  the  March  15

---

"contraband."  (First Amended Complaint dated Dec. 15, 2004 ("1st
Am. Compl."), at 5).  The plaintiff claims that, in fact, all of
the incidents of which he complains are part of a larger conspiracy
to connect him with another murder committed around the same time
as his offense.  (Plaintiff's Motion for Summary Judgment dated
Oct. 4, 2006 ("Pl. Mot. Summ. Judg.") at 2-3).  There is no support
in the record for this allegation.

[4] The plaintiff attaches what appear to be excerpts from the
transcript of his administrative segregation hearing on April 4,
1995.  The document is not identified by the plaintiff nor is its
provenance  clear.    Nonetheless,  drawing  "all  justifiable
inferences" in favor of the plaintiff as the nonmoving party,
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), I will
treat  the  document  as  a  true  and  accurate  record  of  that
proceeding.

disciplinary charges that arose from the search of his cell.[5]  (2nd Am. Compl. at 3; 1st Am. Compl. at 6).   The defendants, by contrast, suggest that Mr. McFadden was placed in administrative segregation because he "repeatedly threw feces on corrections officers, and [] assaulted two corrections officers" and therefore "had to be separated from the rest of the population." (Declaration of William Clark dated July 24, 2006 ("Clark Decl."), attached to Def. Memo.).   Excerpts from the administrative segregation hearing transcript provide some support for the plaintiff's claim regarding the reason for his segregation (Hearing Tr. at 82-83), but also contain references to numerous other disciplinary incidents involving the plaintiff.  (Hearing Tr. at 67, 86-87, 91-93).

Mr. McFadden does not appear to have appealed the disciplinary charges of March 15, 1995 or formally complained of his administrative segregation -- though he claims that he was denied the right to appeal the outcome of his April 1995 administrative segregation hearing -- until January 28, 2000, when he filed a grievance claiming that he was being improperly held in administrative segregation and that the sealed criminal charges had not been expunged from his Department of Correctional Services

---

[5] The plaintiff also claims that during this hearing he was denied "the rights afford[ed] to others," including legal assistance, the right to confront witnesses and offer evidence, and the right to appeal the outcome of the hearing.  (2nd Am. Compl. at 3).

("DOCS") file.[6]  (Inmate Grievance Complaint  dated Jan. 28, 2000, attached to 2nd Am. Compl.).  This grievance was denied by the Inmate Grievance Resolution Committee, which ruled that "[t]he facility is within its rights to continue Admin[istrative] Segregation placement" and advised Mr. McFadden that he could obtain copies of his administrative segregation reviews via New York's Freedom of Information Law if he so desired. (Response to Inmate Grievance Complaint, dated Feb. 11, 2000 ("Response to Grievance"), attached to Plaintiff's 2nd Am. Compl.). Mr. McFadden indicated his desire to appeal the denial of his grievance, but there is no record of any such appeal.  (Response to Grievance).

From January 2000 through January 2006, the plaintiff submitted numerous (and somewhat haphazard) complaints regarding the March 15 disciplinary action, his five-year placement in administrative segregation, and the alleged failure to remove the 1995 criminal charges from his DOCS file. (Inmate Grievance Complaints, attached to Plaintiff's Reply to Defendants' Answer, dated July 7, 2006 ("Reply")).  In what appears to be the most recent action on Mr. McFadden's grievances, DOCS Inmate Grievance Program Central Office Review Committee on January 25, 2006 upheld

---

[6] The grievance refers to "clearly erroneous information that has been used to keep me in my present confinement."  Mr. McFadden appears to believe that he was kept in administrative segregation as the result of the DOCS disciplinary charges of March 15 and the linked criminal charges, and that both should have been expunged from his DOCS file as a result of the court-ordered sealing of the criminal charges.  (2nd Am. Compl. at 3; Reply at 4).

the Superintendent's denial of Mr. McFadden's request to have the disciplinary charges removed from his record and advised Mr. McFadden to challenge the accuracy of his prison record via the procedure set forth in the New York Code of Rules and Regulations. (Document entitled "Grievant's Request Unanimously Denied with Clarification," attached to Reply).

    B. <u>Procedural History</u>

    The plaintiff signed the initial complaint on June 25, 2003. That complaint was received in the United States District Court for the Northern District of New York on August 13, 2003 and subsequently transferred to this Court on September 26, 2003.  On October 15, 2004, then-Chief Judge Michael B. Mukasey dismissed the plaintiff's complaints against various municipal and judicial defendants who he found to be immune from suit and dismissed his other complaints for failure to state a claim.  He granted the plaintiff leave to amend his complaint within sixty days to name the proper parties as defendants and to further detail his allegations. (Order dated Oct. 15, 2004).  The plaintiff filed an amended complaint on January 6, 2005.  (1st Am. Compl.).  On June 1, 2005, Chief Judge Mukasey again dismissed the complaint for failure to name proper parties as defendants and failure to allege facts sufficient to establish a violation of due process.  He gave the plaintiff leave to file a second amended complaint within thirty days of the order.  (Order dated June 1, 2005).  On June 21,

2005, the plaintiff filed the complaint which is now before the Court. (2nd Am. Compl.).

The current complaint alleges that the defendant officers and officials harassed him by conducting daily cell searches, placed him in administrative segregation on the basis of false disciplinary charges, denied him the opportunity to challenge evidence used against him, and filed false criminal charges against him. (2nd Am. Compl. at 2-3). Thus, I deem the plaintiff to be alleging violations of his due process rights and his rights under the Fourth Amendment, as well as constitutionally-based versions of malicious prosecution, false arrest, and false imprisonment, all stemming from the events of March 13, 1995, and his subsequent removal to administrative segregation.[7] The plaintiff also claims that DOCS's alleged refusal to expunge the sealed criminal charges from his record constitutes an ongoing violation of due process.[8]

---

[7] In addition, in his First Amended Complaint the plaintiff alleges violations of unspecified New York State regulations governing the "safe-keeping of prisoners confined to [the custody of county jails]," presumably referring to 9 NYCRR § 7000 et seq., which governs the "Minimum Standards and Regulations For Management of County Jails and Penitentiaries." (1st Am. Compl. at 8). He also accuses defendant Kralik of "failing in duties imposed by" New York Criminal Procedure Law § 500 et seq., "Procedures For Securing Attendance At Criminal Actions And Proceedings Of Defendants And Witnesses Under Control Of Court -- Recognizance, Bail And Commitment". (1st Am. Compl. at 9). Because these claims were omitted from the plaintiff's Second Amended Complaint, and because he does not clearly make out a cause of action under these sections of state law, they will not be addressed here.

[8] Various of the plaintiff's grievances also allege that the defendants and DOCS improperly relied on sealed juvenile charges in

(Reply at 10).

The defendants answered on June 26, 2000 (Answer, attached as Exh. E to Pl. Mot. Summ. Judg.), denying all allegations and asserting various affirmative defenses, and the plaintiff replied on July 12, 2006.  The defendants then filed a motion for summary judgment pursuant to Rule 56 on July 27, 2006.  The plaintiff filed papers in opposition to that motion and filed what seems to be intended as a cross-motion for summary judgment.  (Plaintiff's Letter-Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, received Aug. 15, 2006; Pl. Mot. Summ. Judg.).  The defendants filed a response on October 30, 2006.[9]

Discussion

    A. Standard of Review

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

---

placing him in administrative segregation and in maintaining that placement.  (Letter to Superintendent Dale Artus dated July 31, 2000, attached as Exh. E to Reply).

    [9] In addition to submitting almost wholly unrelated news items and sensational congressional testimony regarding the plaintiff's crimes, the defendants repeatedly editorialize regarding the justice system's failure to preclude the plaintiff from availing himself of the remedies available. (Def. Memo. at 7 ("It is rather appalling that plaintiff has been permitted to file this pro se suit."); Clark Decl, ¶ 7 ("It is troubling and frustrating [] that plaintiff has been permitted to file a lawsuit almost 10 years after he was an inmate in Rockland County.")).  These submissions are irrelevant and the arguments unhelpful.

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Marvel Characters, Inc. v. Simon</u>, 310 F.3d 280, 285-86 (2d Cir. 2002); <u>Andy Warhol Foundation for the Visual Arts, Inc. v. Federal Insurance Co.</u>, 189 F.3d 208, 214 (2d Cir. 1999).

The party moving for summer judgment bears the initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (internal quotations omitted). Where the moving party meets that burden, the opposing party may not "rest upon the mere allegations or denials of the adverse party's pleading," but must come forward with "specific facts showing that there is a genuine issue for trial," Fed. R. Civ. P. 56(e), by "a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322.

In assessing the record to determine whether there is a genuine issue of material fact, the court must resolve all ambiguities and draw all reasonable inferences in favor of the nonmoving party. <u>Anderson</u>, 477 U.S. at 255; <u>Vann v. City of New York</u>, 72 F.3d 1040, 1048-49 (2d Cir. 1995). However, the court

9

must inquire whether "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," Anderson, 477 U.S. at 249 (citation omitted), and grant summary judgment where the nonmovant's evidence is conclusory, speculative, or not significantly probative.   Id. at 249-50.   "The litigant opposing summary judgment may not rest upon mere conclusory allegations or denials, but must bring forth some affirmative indication that his version of relevant events is not fanciful." Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 101 (2d Cir. 1997) (internal quotations and citations omitted); see also Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (a nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts"); Goenaga v. March of Dimes Birth Defects Foundation, 51 F.3d 14, 18 (2d Cir. 1995) (nonmovant "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible").   In sum, if the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First National Bank of Arizona v. Cities Service Co., 391 U.S. 253, 288 (1968)).

Where, as here, a litigant is pro se, his pleadings should be read liberally and interpreted "to raise the strongest arguments that they suggest."   McPherson v. Coombe, 174 F.3d 276, 280 (2d

10

Cir. 1999) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).   Nevertheless, proceeding pro se does not relieve a litigant from the usual requirements of summary judgment. Feurtado v. City of New York, 337 F. Supp. 2d 593, 596 (S.D.N.Y. 2004); Fitzpatrick v. New York Cornell Hospital, No. 00 Civ. 8594, 2003 WL 102853, at *5 (S.D.N.Y. Jan. 9, 2003)(citing cases); Lee v. Coughlin, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (pro se party's "bald assertion, completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment").

   B. Constitutional Claims

   As noted above, Mr. McFadden appears to allege violations of his due process rights and his rights under the Fourth Amendment, malicious prosecution, false arrest, and false imprisonment, all stemming from the cell search and his subsequent removal to administrative segregation.   Since all of these claims arise from the same incident and are governed by the same statute of limitations under § 1983, I will treat them together for the purpose of analyzing their timeliness.[10]

   1. Statutes of Limitations

   Section 1983 claims are governed by state statutes of limitations for personal injury actions.   Wilson v. Garcia, 471

_____

   [10] While it is not clear that the plaintiff has fully exhausted his administrative remedies for any of these claims, I do not reach the exhaustion issue because the claims are clearly time-barred.

11

U.S. 261 (1985).  In New York, a § 1983 action must be brought within three years of the accrual of each claim.  Jackson v. Suffolk County Homicide Bureau, 135 F.3d 254, 256 (2d Cir. 1998) (citing Owens v. Okure, 488 U.S. 235, 251 (1989)).  While the statute of limitations to be applied to § 1983 claims is a matter of state law, the accrual date of such claims is determined by federal law.  Wallace v. Kato, ___ U.S. ___, 127 S.Ct. 1091, 1095 (2007); Connolly v. McCall, 254 F.3d 36, 41 (2d Cir. 2001); Eagleston v. Guido, 41 F.3d 865, 871 (2d Cir. 1994).  Under federal law, a cause of action generally accrues "when the plaintiff 'knows or has reason to know' of the harm."  Eagleston, 41 F.3d at 871 (quoting Cullen v. Margiotta, 811 F.2d 698, 725 (2d Cir. 1987)); accord Washington v. County of Rockland, 373 F.3d 310 317 (2d Cir. 2004); Connolly, 254 F.3d at 41; Saunders v. Bonstrom, No. 05 Civ. 7350, 2006 WL 3690660, at *2 (S.D.N.Y. Dec. 13, 2006).

Mr. McFadden's claims appear to be time-barred.  His due process claims related to his administrative segregation and the disciplinary charges against him accrued, at the latest, on April 4, 1995, the date of the plaintiff's administrative segregation hearing.  It was at this point that the plaintiff claims his requests for counsel and records were denied.  As of that date, the plaintiff unquestionably knew of the due process injury of which he now complains.  Since he did not file his first complaint until 2003, more than eight years later, his claim is outside the three-

year statute of limitations and is therefore barred.

In the context of malicious prosecution, the cause of action accrues on the date that the proceedings conclusively terminate in the plaintiff's favor.  Murphy v. Lynn, 53 F.3d 547, 548 (2d Cir. 1995); accord Ramos v. City of New York, No. 05 Civ. 3155, 2006 WL 2871969, at *4 n.6 (S.D.N.Y. Oct. 5, 2006).  The plaintiff's malicious prosecution claim accrued on August 28, 1996, when the criminal charges against him for attempted escape, possession of prison contraband, and criminal mischief were dismissed.[11]  The plaintiff argues that the date of accrual for his malicious prosecution claim is July 31, 2000, the date that the criminal charges were ordered sealed.  This is simply incorrect: dismissal of charges unquestionably constitutes termination of a case in favor of the accused, and thus the statute of limitations began to run at the time of the dismissal.  See Thompson v. City of Mount Vernon, No. 93 Civ. 4788, 1994 WL 561253, at *1 (S.D.N.Y. Oct. 12, 1994) ("The cause of action for malicious prosecution accrues at the time the charges are dismissed."); see also Murphy, 53 F.3d at 547-48 (holding that district court erred in dismissing claim as time-barred where charges were dismissed less than three years before filing of action); Alvarez v. Doe, No. 03 Civ. 7740, 2004 WL

---

[11]  The plaintiff has no claim for malicious prosecution stemming from his March 15 prison disciplinary charges, as there is no evidence of any favorable termination of the proceedings related to those charges.

13

1874972, at *1, *3 (S.D.N.Y Aug. 13, 2004) (holding that plaintiff's malicious prosecution claims accrued when proceedings were "conclusively terminated" by dismissal of charges).

The plaintiff's false arrest and imprisonment claims are also time-barred. The Supreme Court recently established when § 1983 false arrest or false imprisonment claims accrue.  In Wallace, __ U.S. at ___, 127 S. Ct. at 1095, the Court held that "[l]imitations begin to run against an action for false imprisonment when the alleged false imprisonment ends" and that "a false imprisonment ends once the victim becomes held pursuant to [legal] process," that is, once some process is afforded the imprisoned. "Thereafter, unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution." Id. (quoting W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser and Keeton on Law of Torts, § 119, pp. 885-886 (5th ed. 1984)).  Here, application of this rule means that plaintiff's false imprisonment ended, and the statute of limitations on his false imprisonment claim began to run, at the time of his administrative segregation hearing on April 4, 1995.

### a. Continuing Violation Doctrine

Mr. McFadden argues, however, that his claims are not time-barred because they allege a continuing violation.  (Reply at 5). He contends that because DOCS kept him in administrative segregation until August 2, 2000 and he filed suit within three

years of that date, his due process and false imprisonment claims
are still actionable.  Moreover, he suggests that DOCS continues to
use the sealed criminal charges of March 15, 1995 to deny him his
"rights".  (Reply at 6).

"The continuing violation doctrine generally provides that
where there is a discriminatory practice or policy, the accrual
time for the statute of limitations may be delayed until the last
act in furtherance of the policy." Velez v. Reynolds, 325 F. Supp.
2d 293, 312 (S.D.N.Y. 2004) (citing Harris v. City of New York, 186
F.3d 243, 248 (2d Cir. 1999)); see also Cornwell v. Robinson, 23
F.3d 694, 704 (2d Cir. 1994) ("Where a continuing violation can be
shown, the plaintiff is entitled to bring suit challenging all
conduct that was a part of that violation, even conduct that
occurred outside the limitations period."); Annis v. County of
Westchester, 136 F.3d 239, 246 (2d Cir. 1998)("The continuing-
violation exception 'extends the limitations period for all claims
of discriminatory acts committed under an ongoing policy of
discrimination even if those acts, standing alone, would have been
barred by the statute of limitations.'" (quoting Lightfoot v. Union
Carbide Corp., 110 F.3d 898, 907 (2d Cir. 1997)).  The doctrine has
"usually -- but not exclusively -- been applied in the context of
Title VII discrimination claims."[12]  Remigio v. Kelly, No. 04 Civ.

---

[12] Thus, many of the cases that deal with the continuing
violation doctrine refer only to "discrimination" and not to other
tortious conduct.

15

1877, 2005 WL 1950138, at *6 (S.D.N.Y. Aug. 12, 2005).  However, it has also been applied to "a variety of non-Title VII claims, including a range of constitutional theories."  Id. at *7 (collecting cases).

To invoke the continuing violation doctrine, a plaintiff must show either "(1) a specific ongoing discriminatory policy or practice, or (2) specific and related instances of discrimination that are permitted to continue unremedied for so long as to amount to a discriminatory policy or practice." Velez, 325 F. Supp. 2d at 312 (citing Bendik v. Credit Suisse First Boston (USA), Inc., No. 02 Civ. 9554, 2004 WL 736852, at *6 (S.D.N.Y. Apr. 5, 2004)); accord Cornwell, 23 F.3d at 704 (2d Cir. 1994).  If the latter, then as long as the most recent in the series of related wrongful acts falls within the statute of limitations, claims concerning the earlier acts in the series will not be time-barred.  Cornwell, 23 F.3d at 704; Gobin v. New York City Health & Hospital Corp., No. 04 Civ. 3207, 2006 WL 2038621, at *3 (S.D.N.Y. July 19, 2006). However, "discrete incidents of discrimination that are not related to discriminatory policies or mechanisms" do not give rise to a continuing violation.  Cornwell, 23 F.3d at 704; Lightfoot, 110 F.3d at 907 (discrete incidents of discrimination not related to identifiable policy or practice do not amount to continuing violation unless they are "specifically related and allowed to continue unremedied for so long as to constitute a discriminatory

16

policy or practice"); Remigio, 2005 WL 1950138, at *6 (noting that "each discrete discriminatory act starts a new clock for filing charges alleging that act")(quoting National Railroad Passenger Corp. v. Morgan, 536 U.S. 101, 113 (2002)); Smering v. FMC Corp., No. 01 Civ. 721, 2004 WL 2191561, at *12 (W.D.N.Y. Sept. 24, 2004)(finding no continuing violation because "[p]laintiff alleges discrete incidents of disparate treatment, not a discriminatory policy or mechanism").

In addition, a continuing violation may not be based on the continuing effects of earlier unlawful conduct or on a completed unlawful act. Blesedell v. Mobil Oil Co., 708 F. Supp. 1408, 1414 (S.D.N.Y. 1989) (citing Delaware State College v. Ricks, 449 U.S. 250, 257 (1980) and United Air Lines v. Evans, 431 U.S. 553, 558 (1977); see also Harris v. City of New York, 186 F.3d 243, 250 (2d Cir. 1999) ("[A] continuing violation cannot be established merely because the claimant continues to feel the effects of a time-barred discriminatory act."); Remigio, 2005 WL 1950138, at *7 (distinguishing continuing unlawful acts from continuing effects of earlier unlawful act); Carrasco v. New York City Off-Track Betting Corp., 858 F. Supp. 28, 32 (S.D.N.Y. 1994) (holding that residual effects of failure to promote do not constitute a continuing violation); Blankman v. County of Nassau, 819 F. Supp. 198, 207 (E.D.N.Y. 1993)("[Th]e mere fact that wrongful acts may have a continuing impact is not sufficient to find a continuing

violation."). Nor may it be based on "the fact that the plaintiff's ongoing protests, objections, requests for reconsideration, and persistent demands for administrative and judicial review have caused the dispute to linger to the present day." Yip v. Board of Trustees of State University of New York, No. 03 Civ. 00959, 2004 WL 2202594, at *5 (W.D.N.Y. Sept. 29, 2004); see also Ricks, 449 U.S. at 261 (in employment discrimination context, mere requests for reconsideration do not extend the normal statute of limitations period); Morse v. University of Vermont, 973 F.2d 122, 125 (2d Cir. 1992) (continuing internal administrative review of allegedly discriminatory decision had no effect on running of statute of limitations period); Jaghory v. New York State Department of Education, No. 95 Civ. 3478, 1996 WL 712668, at *5 (E.D.N.Y. Dec. 5, 1996) (denial of "protests and objections" to original act not a continuing violation).

Finally, it should be noted that courts in the Second Circuit generally disfavor the continuing violation doctrine and apply it only in "compelling circumstances." Remigio, 2005 WL 1950138, at *8; Nakis v. Potter, No. 01 Civ. 10047, 2004 WL 2903718, at *10 n.2 (S.D.N.Y. Dec. 15, 2004) (collecting cases); Curtis v. Airborne Freight Corp., 87 F. Supp. 2d 234, 244 (S.D.N.Y. 2000); Blesedell, 708 F. Supp. at 1415. Courts have found such compelling circumstances where

the unlawful conduct takes place over a period of time,

> making it difficult to pinpoint the exact day the
> violation occurred; where there is an express, openly
> espoused policy that is alleged to be discriminatory; or
> where there is a pattern of covert conduct such that the
> plaintiff only belatedly recognizes its unlawfulness.

Yip, 2004 WL 2202594, at *4 (internal quotation marks and citations
omitted).

The continuing violation doctrine is inapplicable to the
plaintiff's claims. The plaintiff argues, reading his complaint
liberally, that the series of decisions over five years by DOCS to
keep him in administrative segregation were all based at least in
part on the allegedly false March 15 disciplinary charges or the
related criminal charges -- which is hardly certain, as the
excerpts from his administrative segregation hearing hint at a
record littered with references to his problematic behavior as an
inmate -- and that all these decisions constitute one continuing
violation. Rather than a continuing violation, this is a classic
example of completed allegedly unlawful conduct that continues to
have an impact. See, e.g., Evans, 431 U.S. at 558 (finding
establishment of seniority system not a continuing violation
because it merely "gives present effect to a past act of
discrimination"); Remigio, 2005 WL 1950138, at *8 (if the plaintiff
"had simply complained about the continuing ill effects" resulting
from the complained-of property seizure, "the continuing violation
doctrine could not apply"); Carrasco, 858 F. Supp. at 32 ("residual
effects" of complained-of conduct "insufficient to support a

19

continuing violation claim"); <u>LaBeach v. Nestle Co.</u>, 658 F. Supp. 676, 687 (S.D.N.Y. 1987) (loss of income accompanying demotion was merely present effect of past discrimination and thus not continuing violation).  The violations of which the plaintiff complains all concern the charges of March 1995 and the alleged deprivation of due process during the April 1995 hearing on those charges, which are clearly "discrete incidents of [alleged constitutional violation]."[13]  <u>Cornwell</u>, 23 F.3d at 704; <u>see also</u> <u>Konigsberg v. Lefevre</u>, 267 F. Supp. 2d 255, 262-63 (N.D.N.Y. 2003) (citing <u>Moskowitz v. Board of Trustees of Purdue University</u>, 5 F.3d 279, 282 (7th Cir. 1993))("A party cannot invoke the doctrine to avoid statute of limitations problems when he knew after each allegedly wrongful act that it was actionable, but chose not to file federal claims regarding them within the limitations period.").  He does not allege any flaw in subsequent administrative segregation hearings, only that the results were influenced by the complained-of violations in March 1995.  In addition, the facts that the plaintiff was placed in administrative segregation in multiple facilities and presumably by multiple

---

[13] This is demonstrated in part by the fact that the plaintiff names as defendants only employees of the RCJ, not of the other facilities in which he was placed in administrative segregation. In addition to meaning that this complaint would have to be dismissed for failure to name the correct parties if Mr. McFadden's claims were not time-barred, the naming of only RCJ employees is indicative of the fact that the conduct of which he complains is really that which occurred at the RCJ during March 1995, and that the link to any later occurrences is tenuous at best.

prison administrators, and that the decisions that he complains of thus "involv[e] different people, circumstances and location[s]," weigh against finding a continuing violation in this case. Konigsberg, 267 F. Supp. 2d at 263; see also Sundaram v. Brookhaven National Laboratories, 424 F. Supp. 2d 545, 561 (E.D.N.Y. 2006) (finding that decisions that "occurred at different times" and "were made by different persons" were not continuing violation).

### b. Use of Sealed Records

Mr. McFadden pleads certain claims that may not be time-barred.  These are his contentions that DOCS used his dismissed criminal charges as a basis for keeping him in administrative segregation until August 2, 2000 and for denying him other benefits such as family visitation in violation of his due process rights. In fact, Mr. McFadden appears to believe that the dismissed criminal charges along with other "false information," including his juvenile records from Pennsylvania, continue to be used by DOCS to designate him a "central monitoring case" and to deny him other benefits such as preferential job assignments.  (Letter to Superintendent Dale Artus, dated July 31, 2000, attached to Reply; Letter to Inspector General, dated Feb. 18, 2004, attached to Reply; Letter to L. McClaire, dated Sept. 23, 2004, attached to Reply).  These claims, however,  must be dismissed for any number of reasons.  First, Mr. McFadden offers no evidence that it is DOCS' reliance on the criminal charges against him, as opposed to

21

the DOCS disciplinary charges stemming from the same conduct, that continues to injure him. There is no evidence that the disciplinary charges were dismissed or in any way sealed or expunged from his record. Furthermore, Mr. McFadden has plainly failed to name the correct defendants, presumably the DOCS custodian of records and officials who are relying on those records in making their decisions. Finally, it seems clear that the plaintiff has failed to exhaust any claims in this regard, as the response to his last grievance indicates that he has still not contacted the proper individual to have the charges removed from his record. ("Grievant's Request Unanimously Denied with Clarification," attached to Reply). For all of these reasons, any claims related to the failure to expunge the sealed criminal charges or other inaccurate information from his record must be dismissed.

Conclusion

_____For the reasons set forth above, I recommend that the defendants' motion for summary judgment be granted and all claims against them be dismissed. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(e) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Richard C. Casey,

U.S.D.J., Room 1350, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007.   Failure to file timely objections will preclude appellate review.

Respectfully submitted,

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated:   New York, New York
         March 28, 2007

Copies mailed this date to:

Reginald McFadden
95-A-6279
Clinton Correctional Facility
Box 2001
Dannemora, NY 12929-2001

Paul Nowicki, Esq.
Assistant County Attorney
18 New Hempstead Road
New City, New York   10956